Rolf Detlev KAESTEL *v.* STATE of Arkansas

CR 81-70                                    626 S.W. 2d 940

Supreme Court of Arkansas
Opinion delivered January 18, 1982

Appellant, *pro se.*

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, Rolf Kaestel, age 29, along with two other men, Terry Spitler, 22, and Selid Holt, 20, and two women, Alice Wallace, 16, and Linda Wright, 19, was charged with aggravated robbery committed at Senor Bob's Taco Hut in Fort Smith on February 15, 1981, and with being an habitual criminal. Kaestel was tried separately, found guilty, and sentenced to the maximum punishment of life imprisonment and a $15,000 fine. For reversal he questions the trial court's refusal to suppress evidence obtained by a warrantless search, the legality of the identification procedure, the sufficiency of the evidence, the severity of the sentence, and the admissibility of the State's proof of his previous convictions.

Kaestel, despite the availability of consulting counsel appointed at his request, chose to try his own case and has prepared his own abstract and briefs on appeal. He did not testify either on the motion to suppress or at the trial. All four of his codefendants testified for the State.

Except for minor discrepancies that Kaestel overemphasizes, the testimony is singularly free from dispute. Just before the robbery the five defendants were riding together at

about 7:00 p.m., after dark, in Fort Smith in a large green four-door Dodge sedan owned by Linda Wright and licensed to her in Iowa. Kaestel, decidedly the oldest member of the group and apparently its leader, suggested the robbery of the Taco Hut, entered the Hut with Spitler, exhibited a (toy) gun to the clerk, Dennis Schleuterman, and took about $274 in bills. When the robbers left, Schleuterman called the police, who arrived within about two minutes. Schleuterman gave a detailed description of each robber, including approximate age, height, and weight, color and length of hair, and nature and color of facial hair. Both men were white.

Wayne Redden, a citizen living up the block from the Taco Hut, had noticed that a person was sitting in the driver's seat of a large green car parked across the street from his home. In a few moments a white male ran up and jumped in the car. After the car had started away it stopped to allow another white male to run up and get in. The car then drove off. When the police arrived, Redden went out and told them what he had seen. Schleuterman's description of the robbers and Redden's description of the car were broadcast by radio.

When the two robbers and their companions drove away, Kaestel and Spitler, at Kaestel's suggestion, changed their clothes to avoid detection. Within a few minutes the group stopped at a Roadrunner gas station about three miles from the Taco Hut. They parked in an unusual way, by driving in, turning around, and backing up to the darker side of the station, away from the gas pumps. Kaestel went in the Roadrunner store. Robert Hamilton, a citizen living nearby, had heard the police broadcast, noticed the peculiar parking maneuver, connected the car with the robbery, and called the police, who arrived quickly. We note that the alert actions of the two citizens, Redden and Hamilton, were essential in the apprehension of the robbers.

The five suspects at first cooperated with the police by producing their identification. They sought to avoid suspicion by saying they had just dropped off two hitchhikers. The police, however, searched the car and found on the rear

floorboard a jacket like the one described by Schleuterman and a realistic-looking plastic toy pistol under the jacket. The group were then taken to the scene of the robbery, where Schleuterman positively identified Kaestel and somewhat less positively identified Spitler. When the police searched the police vehicle in which the three men had been transported from the Roadrunner to the Taco Hut they found $179 hidden under the front seat. There was proof that no one else could have secreted the money there. Kaestel had $63 in his wallet.

We find no merit in any of Kaestel's arguments for reversal. The trial court's denial of the motion to suppress proof about the jacket and toy pistol found in the car was not error, for two reasons. First, the articles were properly seized under the automobile exception to the exclusionary rule. Within that exception officers must have reasonable cause to search a vehicle. *Chambers* v. *Maroney,* 399 U.S. 42 (1970); *Carroll* v. *United States,* 267 U.S. 132 (1925); *Tillman* v. *State,* 271 Ark. 552, 556-561, 609 S.W. 2d 340 (1980). Here the vehicle corresponded to Redden's report, which implicated it in the robbery. It contained three males, as indicated by Redden. Its peculiar maneuver at the Roadrunner aroused the suspicion of both Hamilton and the police. Finally, Schleuterman's description of the two men was unusually complete. Kaestel says in his brief that two of the detainees "only vaguely fit the description of the suspects," but that statement is not shown by the abstract of the record to have any basis. Both the trial judge and the jury had the opportunity to see Kaestel and Spitler and to know how accurate the descriptions were. We have no similar basis for comparison. There were also present the required exigent circumstances, in view of Mrs. Wright's possible right to insist upon driving her vehicle away and of the difficulty of obtaining a search warrant quickly at night. Hence the warrantless search was proper. *Chambers, supra.*

Second, the correctness of the trial court's ruling upon Kaestel's motion to suppress is actually immaterial, for the State never sought to prove the search of the car or the discovery of the jacket and pistol. To the contrary, the State rested its case after calling only six witnesses: Schleuterman

to prove the actual robbery and identify the robbers; the four codefendants, to confirm Kaestel's participation in the crime; and Redden, to corroborate the accomplices' testimony about the group's flight from the scene. All the testimony about what happened at the Roadrunner and about the search of the car was brought out by Kaestel himself, by cross-examining the State's witnesses and by calling the investigating officers to testify and to produce their investigation reports. Kaestel cannot base a claim of reversible error upon testimony which he himself chose to introduce. *Strode* v. *State*, 259 Ark. 859, 537 S.W. 2d 162 (1976).

Kaestel argues that the identification procedure used by the police was unduly suggestive and prejudicial, in that (1) he was first identified by Schleuterman in a dim light, after Kaestel had been brought back from the Roadrunner, and (2) he should have been placed in a lineup. We perceive no unfairness in the procedure. To the contrary, Schleuterman's identification meets various tests that have been enumerated: At the time of the crime he had the opportunity to look at Kaestel in a good light at close range; his detailed description of Kaestel is not shown to be inaccurate; only minutes elapsed between the crime and Schleuterman's identification; and Schleuterman has never wavered in his certainty about Kaestel's identity. See *Reed* v. *State*, 271 Ark. 526, 541, 609 S.W. 2d 898 (1980). Moreover, the fundamental question is whether the pretrial identification so tainted Schleuterman's in-court testimony as to give rise to a substantial likelihood of misidentification. Here the possibility of misidentification is nonexistent, for Schleuterman's identification is confirmed beyond a doubt by the testimony of Kaestel's codefendants.

In view of the facts we have already stated, Kaestel's arguments that the evidence does not support the verdict and that the testimony of his accomplices was not corroborated are not of sufficient merit to warrant discussion. As to the severity of the sentence, except in capital cases we do not review the severity of a sentence within the lawful maximum and not affected by error in the trial, that determination having been committed to the jury by the Constitution and

statutes. *Osborne* v. *State*, 237 Ark. 5, 170, 371 S.W. 2d 518 (1963). Finally, Kaestel agreed that he had been convicted of robbery in New Mexico, and the proof of his two felony convictions in Alabama was supported by photographs taken in Alabama and by fingerprints taken there and matched by later ones taken in Arkansas. We find no substantial defect in the State's prima facie proof of previous convictions, the evidence being sufficient if it satisfies the jury beyond a reasonable doubt. Ark. Stat. Ann. § 41-1003 (Repl. 1977). (The case was tried before the effective date of Act 252 of 1981.)

We have reviewed all objections brought to our attention, whether argued or not, as is our practice in life imprisonment cases. We are convinced that Kaestel had in fact no defense to the charge and that he received a completely fair trial, free from prejudicial error.

Affirmed.