Keith Emmanuel MOORE v. STATE of Arkansas

CR 90-199                                803 S.W.2d 553

Supreme Court of Arkansas
Opinion delivered February 18, 1991

*William R. Simpson, Jr.*, Public Defender, *Thomas B. Devine III*, Deputy Defender, by: *Jerry J. Sallings*, Deputy Public Defender, for appellant.

*Mary B. Stallcup*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant appeals his conviction for aggravated robbery, criminal attempt to commit murder, felon in possession of a firearm and his sentence as a habitual offender which totals 112 years imprisonment. At trial, appellant moved to suppress a photo lineup used by the victims, and the court denied

his motion. The victims also made an in-court identification of appellant as their assailant. His sole issue on appeal is that the trial court erred in denying his motion to suppress the in-court identification. Appellant's argument is meritless, and we affirm.

As stated recently, it is for the trial court to determine if there are sufficient aspects of reliability surrounding the identification to permit its use as evidence and then it is for the jury to decide what weight the identification testimony should be given. *McConaughy* v. *State*, 301 Ark. 446, 784 S.W.2d 768 (1990). Further, we do not reverse a trial court's ruling on the admissibility of identification evidence unless it is clearly erroneous, and do not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification. *Id.* Finally, we have also held that even if the identification technique used is impermissibly suggestive, testimony concerning it is admissible if the identification in question is reliable. The following factors must be examined to determine reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description; (4) the level of certainty, and (5) the time lapse between the crime and confrontation. *Id.*

The victims' testimony reflects no doubts that appellant was the person who pulled a gun and demanded the victims' valuables on the night of September 20, 1989. The victims, Lucky Thompson and Kelly Barbee, both related essentially the same story. They were outside in front of Lucky's house, sitting on Kelly's car, when appellant walked up and engaged them in conversation. During the conversation, appellant referred to himself as the devil's son, pulled a gun and asked for all of the victims' valuables. Appellant was about five feet from them and the street light was sufficient to distinguish appellant's face and clothes. Lucky and Kelly testified that the appellant had a mustache and wore a blue cap, a light gray sweatshirt with cut off sleeves and baggy white or khaki pants. After Lucky and Kelly failed to give the appellant their valuables, appellant backed away, pointed his gun at them, pulled its trigger about five times without its firing and then ran away. They saw appellant fire a shot in the air as he ran. Both victims agreed they observed appellant for about ten to fifteen minutes. Shortly afterwards, appellant was found in the same

neighborhood by the police. In this connection, an officer testified that he was driving his car when he saw appellant run from two subjects (Lucky and Kelly) and the officer further related that appellant aimed and shot his pistol at him. Apparently, other officers joined pursuit and arrested appellant. Appellant was conveyed to the police station where his photograph was taken for photographic line-up purposes.

About one and a half hours after their encounter with appellant, Lucky and Kelly were asked to view a photographic lineup of six black males with mustaches. Lucky and Kelly viewed the lineup separately and without prompting from police officers, and they both selected appellant's picture as the person who confronted and threatened them. They said that they recognized appellant immediately because of their encounter just one and a half hours before. Lucky described the perpetrator as being 5'10" to 6' tall, but appellant was actually 5'7". Lucky explained this difference was probably due to the appellant standing on the sidewalk while they were standing in the street when the encounter between them occurred. Given the victims' strong and compelling testimony identifying the appellant, we cannot conclude the trial court was clearly erroneous in determining that testimony to be reliable.

Appellant complains that the photograph taken of him was suggestive because when compared to the other five, his picture was a close-up, showing more of his head and face. He also argues appellant's photograph showed him in clothing that closely matched descriptions given the police by Lucky and Kelly immediately after the incident. From our review of the photographs, we find nothing to show they were impermissibly suggestive. Instead, we conclude those photographs were very well selected and offered largely shoulder-to-head shots of six black males with mustaches. Appellant's photo barely reflected a white shirt but several other pictures revealed men in white or light-colored shirts, although two had some colored trim in their shirts. Appellant closed his eyes and had to be restrained when the photograph was taken, but those officers were not included or revealed in the picture. We fail to see how any of appellant's complaints tainted the photographic lineup. We should also mention that Lucky Thompson, by his testimony, left no doubt that he quickly selected appellant from the photographic lineup

562

only because Lucky "knew who [he] was" and because "I recognized the guy."

Because the trial court correctly refused appellant's motion to suppress the in-court identifications, we affirm.