Albert Ray BISHOP *v.* STATE of Arkansas

CR 92-440 839 S.W.2d 6

Supreme Court of Arkansas
Opinion delivered September 28, 1992

*Larry W. Horton*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This is an appeal from the appellant's

convictions for aggravated robbery and rape. He received consecutive sentences of sixty years' imprisonment on each count. Before trial, appellant made a motion to suppress the victim's in-court identification of the appellant as being tainted by the police photo lineup. After a hearing, the trial judge denied the motion. At trial, appellant also made a directed verdict motion which was denied by the trial judge. Appellant argues on appeal that the victim's trial identification of him as the rapist was tainted by a suggestive pre-trial photograph lineup. He also argues that there is insufficient evidence to support his convictions.

On September 12, 1991, the victim was raped and robbed by a man wearing a nylon stocking mask. The man had gained entrance to the victim's house while she was away, and attacked her when she returned home. The man was armed with a double-barreled shotgun. The man demanded money from the victim, and became irate when she only had $6.22. He struck her in the face with his fists and on her hip with the shotgun, and then he raped her. After raping the victim, the man stayed in the house and continued threatening the victim and looking for valuables. He discovered and took a man's diamond ring. The victim estimated that he was in her house for a total of forty-five minutes.

The victim described her attacker as being a large man, maybe 5'9" or taller, being of a stocky or strong build and had a beard and a mustache. She said that her attacker wore dark cotton pants and a light khaki-colored shirt. The victim testified that, during the rape, the attacker was within a few inches from her face, and she focused on remembering the details of his face — shape of the face, shape of the nose, hairline, and skin tone. She stated that she noticed under the stocking mask that the attacker had a dark place about the size of a dime on his right cheek. Besides being close to her during the rape, the victim stated that the attacker stayed close to her — the length of a shotgun — while he was in the house.

The victim talked to the police the night of the attack and came to the police department the next night to view a photographic lineup. The appellant was a suspect and had been photographed wearing a light khaki shirt for the lineup. Another man in the lineup wore a similar shirt. The victim identified the appellant in the photographic lineup, and also identified him in

court as the rapist.

In arguing that the photographic lineup was suggestive, the appellant focuses on the following things: 1) Before taking his picture for the photographic lineup, the police officers had the appellant put on a light khaki shirt that was recovered at his house during the arrest; 2) There was only one other person in the lineup wearing a khaki shirt like the one the victim described her attacker as wearing; and 3) During the photographic lineup, an officer told the victim "by looking at this picture it appears that he has a dark place on his cheeks."

If there are suggestive elements in the before-trial identification procedure that make it all but inevitable that the victim will identify one person as the criminal, the procedure is so undermined that it violates due process. *Moser* v. *State*, 287 Ark. 105, 696 S.W.2d 744 (1985). However, it is for the trial court to determine if there are sufficient aspects of reliability surrounding the identification to permit its use as evidence and then it is for the jury to decide what weight the identification testimony should be given. *Moore* v. *State*, 304 Ark. 558, 803 S.W.2d 553 (1991). Further, we do not reverse a trial court's ruling on the admissibility of an identification unless it is clearly erroneous, and we do not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification. *Id.*

This court has also held that even if the identification technique used is impermissibly suggestive, testimony concerning it is admissible if the identification in question is reliable. *Id.* We have held that the following factors must be examined to determine reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description; (4) the level of certainty; and (5) the time lapse between the crime and confrontation. *Id.*

Turning to appellant's arguments, we first consider his charge that the photographic lineup was tainted by the police having him wear his khaki-colored shirt. This court has held that a lineup is not per se unconstitutionally suggestive merely because only one person was wearing a piece of clothing similar to the one by the offender. *Hogan* v. *State*, 281 Ark. 250, 663

S.W.2d 726 (1984). Here, as discussed above, another man besides the appellant was shown wearing a khaki-colored shirt. All six men in the lineup otherwise were similar in appearance including having mustaches and beards. The victim testified that she could easily tell from the appellant's face in the picture that he was her attacker because, while he had a nylon stocking over his face at the time of the crime, she was only six inches from him and could easily observe details of his face. She had no question in her mind concerning her identification of appellant. *See Evans* v. *State*, 310 Ark. 397, 836 S.W.2d 384 (1992).

Appellant further complains concerning an officer's statement made when the prosecutrix was viewing the photographic lineup. He said, "By looking at this picture it appears that he has a dark place on his cheeks. You look pretty close to it (sic), could have been what you was looking at?" The prosecutrix responded that she could tell there was something on the cheek of the person in the picture referred to by the officer, but said that the picture was not large enough to tell if the dark place was identical to the one on her attacker's face. Instead, she identified appellant's picture by paying attention "to the shape of his face, the size of his nose, the hair line, plus the mark."

■ Aside from appellant's arguments that the officers' actions and remarks were impermissibly suggestive, the totality of the circumstances supports the reliability of the prosecutrix's identification of appellant. In reviewing the record in light of the factors cited in *Moore* above, the prosecutrix had the opportunity to view her attacker, because he was in the prosecutrix's home for forty-five minutes and the lights were on the entire time. Again, while the appellant wore a stocking mask throughout the episode, the prosecutrix testified that she could tell the details of her attacker's face through the nylon stocking and that he was in close range to her the entire time. She further testified that she focused on paying close attention to the details of appellant's face because, if she survived the ordeal, she wanted to be able to identify him. The victim never changed her description of her attacker, and she was positive in both her pre-court identification and in-court identification. Further, the prosecutrix went to the police station the night after she was attacked, and identified the appellant in a photographic lineup. Thus, her identification of appellant occurred only one day after she was raped. In sum, this

court cannot say that the trial court's denial of the appellant's motion to suppress the in-court identification was clearly erroneous.

In the second issue, the appellant argues that there is insufficient evidence to support his convictions for rape and aggravated robbery. This court treats directed verdict motions as challenges to the sufficiency of evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). We affirm if there is substantial evidence to support the verdict, and in making this determination, we review the evidence in the light most favorable to the appellee. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988).

In rape cases, this court has consistently held that the requirement of substantial evidence is satisfied by the rape victim's testimony. *Lewis* v. *State*, 295 Ark. 499, 749 S.W.2d 672 (1988). However, the appellant appears to suggest that the prosecutrix's testimony is insufficient because her attacker was wearing a stocking mask during the entire criminal episode. This court found sufficient evidence in *Tosh* v. *State*, 278 Ark. 377, 646 S.W.2d 6 (1983), where the robbery victims identified the robber even though he wore a stocking mask during the robbery. In *Tosh*, one of the victims, an artist, testified that she focused on her attacker's facial features and that the stocking did not change these features. As we pointed out when discussing the identification issue above, the prosecutrix testified that she focused on her attacker's features so that she could identify him and that she could see his features through the stocking. The appellant's attorney, on the other hand, questioned witnesses, so as to make it clear that the prosecutrix's attacker never took off his mask. The witness's stories and demeanor when asked about this factual question was before the jury, and the jury obviously believed that the prosecutrix could identify the appellant as her attacker in spite of the nylon stocking he wore.

Besides the prosecutrix's identification of appellant, the state presented evidence of fibers found on clothing obtained from the appellant's house that matched the fibers of the blanket and pillow on the prosecutrix's bed. Also, fibers similar to the appellant's work pants were found on the prosecutrix's clothes. Based upon the evidence set out above, we have not hesitancy in holding there is sufficient evidence to support appellant's convic-

tion of rape. *See* Ark. Code Ann. § 5-14-103 (1987).

 Concerning appellant's robbery conviction, a person commits aggravated robbery if, with the purpose of committing a theft, he employs or threatens to immediately employ physical force upon another, and he is armed with a deadly weapon. Ark. Code Ann. §§ 5-12-102(a) and 5-12-103(a)(1) (1987). As thoroughly discussed above, the prosecutrix identified the appellant as the man who had robbed her. She testified that he was armed with a shotgun, and took $6.22 and a diamond ring from her house. The evidence clearly supports appellant's aggravated robbery conviction.

We affirm