Robert D. GUNTER, Jr. *v.* STATE of Arkansas

CR 92-1222 857 S.W.2d 156

Supreme Court of Arkansas
Opinion delivered June 21, 1993

*Christopher O'Hara Carter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Robert D. Gunter, Jr. appeals from his conviction for rape. Gunter testified in his own behalf, admitting that sexual intercourse occurred but maintaining that it was consensual. In Gunter's first trial the jury was unable to agree on a verdict. On retrial, the jury returned a verdict of guilty and sentenced Gunter to a term of forty years in the Department of Correction. None of the six errors ascribed to the trial court are persuasive and, accordingly, we affirm the judgment entered on the conviction.

On June 6, 1991, the prosecutrix and Judy Smyser met for dinner at the Watertree Inn outside of Mountain Home. They knew the waiter, Matthew Bennett, who also worked as a bartender at the Red Fox, a private club at the Holiday Inn. Bennett invited the two women to come there later, which they did.

The events of that evening are partially disputed. The testimony established that when the prosecutrix returned to her seat after dancing, Robert Gunter, the appellant, was sitting in her seat. Apparently, the prosecutrix, Ms. Smyser, Mr. Gunter, and a friend of Gunter's, were sitting at the same table. There is disagreement over the amount of contact Gunter and the prosecutrix had with each other and whether they danced and drank together.

At approximately 1:00 a.m. the bar was closing and the prosecutrix was looking for her car keys. Although Gunter denied it, witnesses testified that he stood by the door and jingled the car keys, which he evidently obtained from her purse while she was dancing. They then walked out to the prosecutrix's van and got into the van with Gunter in the driver's seat. The women testified that they were under the impression that Gunter was going to drive Ms. Smyser to her car and get some cigarettes and then the prosecutrix would drop him off at his house or at the Red Fox. After dropping Ms. Smyser off, and getting cigarettes, Gunter drove down Cranfield Road and went to the Cranfield campgrounds. The prosecutrix testified that at this point Gunter became violent and would not take "no" for an answer. The parties agree that sexual intercourse occurred. However, Gunter

insists it was consensual and the prosecutrix contends he pushed her to the back seat and forcibly had oral sex and intercourse with her.

The prosecutrix dropped Gunter off at the Red Fox and drove directly to the Mountain Home Police Department.

Officer Tommy Steen met Deputy Kenneth Grayham and the prosecutrix at the Baxter County Regional Hospital where she answered questions and was examined. Deputy Grayham, Dr. Robert Kerr, the prosecutrix's doctor, and Danette Grayham, a jailer/dispatcher with the sheriff's department who took pictures of the victim, all testified that she was bruised in several places and had a scratch with a bruise around it on her upper arm. Blood was also discovered on the back seat of the van where intercourse admittedly occurred. A warrant was issued for the arrest of Robert Gunter. When the warrant was executed he was found hiding in a closet at the home of his former wife.

## I

We first address the argument that the verdict was contrary to the substantial weight of the evidence.

After the State's case, and again at the close, Gunter moved for a dismissal of the charges on the basis that the State failed to meet its burden of proof. The trial court stated that it found the victim's testimony convincing and denied the motion.

On appeal, before considering other assignments of error we determine the sufficiency of evidence, including any proof which should not have been admitted. *Scroggins* v. *State*, 312 Ark. 106, 848 S.W.2d 400 (1993). A motion for directed verdict is a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, whether direct or circumstantial. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, considering only that evidence which tends to support the verdict. *Brown* v. *State*, 309

Ark. 503, 832 S.W.2d 477 (1992).

■ In rape cases, the requirement of substantial evidence is satisfied by the rape victim's testimony. *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992). We have held the testimony of the victim which shows penetration is enough for conviction, and such testimony need not be corroborated to be sufficient. *Davis* v. *State*, 308 Ark. 481, 825 S.W.2d 584 (1992).

The testimony of the prosecutrix alone provides substantial evidence to support the conviction. She elaborated on the events at the Red Fox, where Gunter and his friend began sitting at their table. At closing time she was unable to find her car keys, but after a few minutes, Gunter, who was standing by the door, held up her keys and jingled them. The prosecutrix, Ms. Smyser, Mr. Gunter, and Gunter's friend walked out to the prosecutrix's van. The friend left but Gunter insisted on getting into the van with the two women.

The prosecutrix testified that she was under the impression that Gunter was going to take her to get cigarettes and come back to the Red Fox, but after they dropped Ms. Smyser off and got the cigarettes he drove to the Cranfield campgrounds. She told Gunter that she needed to go home and check on her daughter and take her medicine but he threw her in the back of the van, got on top of her and held her down with one arm while he took her pants and underwear off with the other. She stated she begged him to stop and not to hurt her. She testified that the appellant then forced her to have oral sex with him, attempted to have anal sex but was unable to complete the act, and then had vaginal sex. She stated that none of these acts were done with her consent.

Deputy Grayham, Dr. Robert Kerr, the prosecutrix's doctor, and Danette Grayham, a jailer/dispatcher with the Baxter County Sheriff's Department, all described bruises on the arm, back, inner thigh and legs of the prosecutrix. There was also blood on the seat in the back of the van which would be consistent with the bleeding from a cut which was described as being on the arm of the prosecutrix.

■■ There were minor conflicts in the testimony of some of the witnesses, but where witness credibility is involved, wide discretion is given to the fact-finder which has the opportunity to

observe the witnesses. *See Hollaman* v. *State*, 312 Ark. 48, 846 S.W.2d 663 (1993); *Lowe* v. *State*, 309 Ark. 463, 830 S.W.2d 864 (1992). Therefore, the evidence was sufficient to support the jury's verdict.

## II

Gunter argues the trial court erred in failing to grant his request to examine the victim's medical records relating to her osteoporosis and mitral valve prolapse conditions. He claims that because Gunter intended to testify in his own behalf and to call her physician to testify concerning her alleged weakened condition, her ability to bruise easily, and the medication she was taking, he is entitled to her medical records under his constitutional right to confront his accusers under the Sixth Amendment to the United States Constitution and Article 2, Section 10 of the Arkansas Constitution. He claims that such records were necessary and relevant to the preparation of his defense.

The right of confrontation provides two types of protection for defendants in criminal cases: the right to face those who testify against them and the opportunity to conduct effective cross-examination. *See George* v. *State*, 306 Ark. 360, 813 S.W.2d 792 (1991); *Bowden* v. *State*, 301 Ark. 303, 783 S.W.2d 842 (1990).

Here, the trial court merely denied Gunter's objection to the introduction of medical testimony offered by the State in the testimony of Dr. Robert Kerr, which in no way implicates Gunter's Sixth Amendment right of confrontation. Dr. Kerr's name was on the witness list and, from the previous trial, Gunter was aware of the nature of Dr. Kerr's testimony. Gunter could have deposed the doctor before trial. He could have had a doctor examine Dr. Kerr's responses and testify at trial regarding the prosecutrix's medical condition. Gunter was also free to cross-examine the prosecutrix and Dr. Kerr at trial.

Additionally, while Gunter moved to compel discovery of the prosecutrix's medical and psychological records prior to the first trial, we find no indication that that motion was renewed prior to the second trial. During the second trial counsel for appellant referred to the motion in connection with his objection to a question to Dr. Kerr concerning the prosecutrix's physical

strength and capacity to resist an assault. In the course of that objection, counsel renewed the motion to discover such records, but that came near the end of the State's case, and certainly it was not incumbent on the trial court to consider a pretrial discovery motion at that late stage in the proceedings.

Finally, appellant has made no showing as to how the prosecutrix's medical and psychological records would be relevant in determining whether she was forcibly raped.

### III

A third argument, the trial court erred in allowing the victim to testify as to the psychological effects of the crime without first affording Gunter with access to her psychological records, is similar to the previous argument.

Gunter contends that due to the prosecutrix's testimony regarding her psychological condition, he should have had access to her psychological records. He points to the testimony of the prosecutrix regarding the medical conditions prior to the rape which had caused her to leave her job and receive Social Security Disability Benefits. The State contends that because it was defense counsel who asked the prosecutrix about her job status and whether she was receiving social security benefits, any error was invited. An appellant cannot base a claim of reversible error upon testimony which he himself chose to introduce. *Kaestel* v. *State*, 274 Ark. 550, 626 S.W.2d 940 (1982).

The pertinent testimony was as follows:

Q. How was your emotional situation following this attack?

A. I was sent to Missouri. I've been seeing a psychiatrist.

Q. I'm sorry I didn't mean it that broadly. I meant on the morning after this attack.

A. On the morning after?

Q. Yes.

A. How was I feeling? Dr. Kerr gave me a shot to knock me out so it could calm me down. I've screamed and I've cried.

Q. It was emotionally upsetting to you?

A. Yes, sir. (TR. 141-142)

 The psychiatrist was not called as a witness nor even identified by name. There was no reference to diagnosis, treatment or number of visits. Moreover, defense counsel had the opportunity to cross-examine the prosecutrix further. In short, we are not persuaded that this passing reference to a psychiatrist, or a claim of being emotionally upset following an alleged rape and sexual assault, must, standing alone, subject the records of the asserted victim to the perusal of the alleged perpetrator. This fragment of testimony was limited in the extreme and provides no basis in our estimation for the opening of records that are particularly sensitive. Ark. R. Evid. 503.

Some six states have addressed the question whether a defendant in a rape case may be entitled to psychological records of the complaining party. Pennsylvania and Massachusetts have held that under the confrontation clause certain psychological records may be made available to the defendant under varying circumstances. *See Commonwealth* v. *Lloyd*, 567 A.2d 1357 (Pa. 1989) and *Commonwealth* v. *Stockhammer*, 570 N.E.2d 992 (Mass. 1991). Connecticut, Illinois, Minnesota and Missouri have rejected this type of access. *See Schmid* v. *State*, 487 N.W.2d 539 (Minn. App. 1992).

In *Pennsylvania* v. *Ritchie*, 480 U.S. 39 (1987), the United States Supreme Court addressed the circumstances under which a criminal defendant may gain access to confidential information. In that case, the defendant was charged with various sex offenses against his minor daughter and sought access to records at the Children and Youth Services. The United States Supreme Court reversed the lower court's decision that the failure to allow the defendant to search the files for relevant information violated the confrontation clause of the Sixth Amendment.

In some of the cases, the appellate court required an in-camera review of the records by the trial judge. However, in *State* v. *Hummel*, 483 N.W.2d 68 (Minn. 1992), the Minnesota Supreme Court held that in-camera examinations are not automatic, but that the defendant must make some showing as to the relevancy of the confidential material.

We conclude the trial court was correct in denying access to the prosecutrix's psychological records.

## IV

Appellant argues that Officer Tommy Steen's testimony regarding the circumstances surrounding Gunter's arrest should have been suppressed. Officer Steen testified that when he and Officer Alman arrived at the home of Kimberly Gunter, she allowed them to come in and search the house. Mrs. Gunter went with the officers as they searched each room. When they reached the bedroom, Mrs. Gunter stayed in the hall. Officer Steen went in and found Robert Gunter hiding in the closet.

Gunter argues that this testimony was more prejudicial than probative and should not have been admitted under Ark. R. Evid. 403. The trial court has discretion in determining the relevance of evidence and in weighing its probative value against unfair prejudice. *Simpson* v. *Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987).

Although the circumstances of the arrest were not vital in this case, the trial judge did not abuse his discretion in allowing such testimony. We have held that flight to avoid arrest may be considered by the jury as corroboration of evidence tending to establish guilt. *See Killcrease* v. *State*, 310 Ark. 392, 836 S.W.2d 380 (1993); *Ferguson* v. *State*, 298 Ark. 600, 769 S.W.2d 418 (1989); *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983). In addition, even if the testimony about Gunter's arrest should not have been admitted, it was harmless error. An appellant must show prejudice because the appellate court will not reverse for harmless error. *Heinze* v. *State*, 309 Ark. 162, 827 S.W.2d 658 (1992). This testimony was not prejudicial and does not warrant reversal.

## V

Robert Gunter objects to the prosecutrix's description of him in her trial testimony as "scroungy." On direct examination, the following occurred:

Q. Now, did he look then as he does now?

A. No.

Q. How is he different?

At this point an objection was made by defense counsel and overruled.

Q. Go ahead.

A. He's cleaned up a lot: his hair is a lot shorter, he has a suit on, he was very scroungy looking. (TR. 101)

Gunter argues that the above statements should have been excluded on the basis of Ark. R. Evid. 403 because they unfairly prejudiced and misled the jury. He claims that the only purpose of the testimony was to show that he was somehow an "unclean" or unkept person and he had cleaned himself up for court.

We are not persuaded that appellant's rights were substantially affected by this reference. Ark. R. Evid. 103. The victim merely used the word "scroungy" in attempting to contrast his appearance in court with the night of the incident. The trial court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice. *Simpson v. Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987). The trial court did not abuse his discretion in allowing the testimony of the victim.

## VI

During the testimony of Officer Steen, the following exchange occurred:

Q. And in terms of this point Mr. Carter was trying to make about her supposedly indicating that he was proposing anal sex and she talked him into vaginal sex, did she portray that as a voluntary sex act?

A. No.

Q. Kind of like where do you want to be poked with a sharp stick, in which eye; isn't it?

A. That's correct. (TR. 308).

At this point, defense counsel objected and moved to strike the statement as being inflammatory and irrelevant. The objection was overruled.

The State submits that even if the comment was

improper, it was not prejudicial and was harmless error. The remark could have had a tendency to inflame and an admonition may have been warranted. But none was requested. The failure to give an admonitory instruction is not prejudicial error in the absence of a request for such an instruction. *Vaughan* v. *State*, 289 Ark. 11, 709 S.W.2d 73 (1989). Because no curative relief was requested at trial, no issue is preserved on appeal.

For the reasons stated, the judgment is affirmed.