John Henry CLAIBORNE *v.* STATE of Arkansas

CR 94-845                                      892 S.W.2d 511

Supreme Court of Arkansas
Opinion delivered February 20, 1995

*Clarence Walden Cash*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Around eight o'clock on the morning of April 1, 1993, an armed burglar broke into the home of Cloy Evans in southwest Little Rock. When the burglar discovered that Evans was inside the home, he ordered him to sit down and stay there. The burglar-robber was in Evans's home for nearly an hour, and during that time he kept checking on Evans to be certain that he did not try to get away or call the police. Evans observed the burglar-robber during this time. When

he left, the burglar took a twenty-gauge shotgun, two twenty-two caliber rifles, ammunition, a fishing rod, jewelry, watches, a small amount of cash, and a blue and white cap.

A short time later, about nine the same morning, a burglar broke and entered the home of Evans's next door neighbors, Homer and Vivian Allbritton. The burglar was dressed the same as the burglar who had broken into the Evans home earlier, except that he was wearing a blue and white cap that was identical to the one taken from Evans. The burglar-robber held a shotgun on Homer Allbritton and told both of the Allbrittons to lie on the floor. The robber took jewelry and money and left in the couple's 1983 Mercury.

The next day a Little Rock police officer responded to a call about a suspicious person matching the burglar-robber's description. The officer testified that the person was walking with a limp, as though he was carrying something in his pants leg. The suspicious person went behind a building, and after he came out from behind the building the officer searched him. He was not carrying a weapon, but the officer searched the building and found two sawed-off shotguns and an Uzi machine gun.

Appellant was charged with two counts of aggravated robbery, two counts of burglary, two counts of theft of property, one count of kidnapping, one count of criminal use of prohibited weapons, and one count of possession of a firearm by a felon. He was convicted of the two counts of burglary, the two counts of aggravated robbery, the one count of kidnapping, and the two counts of theft of property. The charge of criminal use of prohibited weapons was dismissed. The charge of possession of a firearm by a felon was severed for a separate trial. Appellant was sentenced as a habitual offender to forty years for the burglary of the Evans home, one hundred years for the aggravated robbery of Evans, thirty years for the theft of Evans's property, forty years for kidnapping Evans, forty years for the burglary of the Allbritton home, one hundred years for the aggravated robbery of the Allbrittons, and thirty years for the theft of the Allbrittons' property. The trial court ordered that all of the sentences, except one, be served consecutively. The result is that appellant was sentenced to a total of three hundred and forty years in prison. We affirm the judgment of convictions.

Appellant's first assignment of error, and its subpoint, involve the trial court's rulings allowing the victims to identify appellant as the person who committed the crimes. After the policeman arrested appellant, Cloy Evans and Homer and Vivian Allbritton were called to the police station to view a lineup for identification purposes. They viewed the lineup separately. Evans "positively" identified appellant as the person who broke into his home and committed the crimes. Vivian Allbritton first identified appellant as a "look-alike" and then changed her identification to "positive." Homer Allbritton did not make an identification.

Appellant moved to suppress both the lineup identification and the in-court identification on the ground that the lineup was impermissibly suggestive. In addition, at the suppression hearing, appellant moved to have Vivian Allbritton placed under the exclusionary provisions of Rule 615 of the Arkansas Rules of Evidence while Cloy Evans testified. The trial court ruled that Vivian Allbritton was a victim and had a right to be present under Rule 616. *See* A.R.E. Rule 616. Appellant replied that Vivian Allbritton was not a victim of the crimes committed against the person and property of Cloy Evans. The trial court then ruled that even if Vivian Allbritton did not have a right to be present as a victim of the crimes against Evans's person and property under Rule 616, she was not a witness to those crimes and would not testify about them; therefore, she could not be excluded under Rule 615. Evans testified that he viewed the lineup of six men for about one minute before identifying appellant. Vivian Allbritton also testified that she had identified appellant. The trial court denied the motion to suppress the out-of-court identification by the two victims.

At the trial, in the State's case-in-chief, Cloy Evans and Vivian Allbritton each identified appellant. Both described the good lighting when he was in their homes and their resulting ability to clearly see appellant.

We will not reverse a trial court's ruling on the admissibility of an identification unless it is clearly erroneous, and we do not inject ourselves into the process of determining reliability unless there is a substantial likelihood of irreparable misidentification. *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992).

Here, there were no suggestive elements to the lineup identification procedure, and there were sufficient aspects of reliability surrounding the identification to permit its use as evidence. It was then for the jury to weigh its credibility. *Id.*

As a subpoint of this first assignment appellant contends that the trial court erred in interpreting Rule 616 of the Arkansas Rules of Evidence to allow Vivian Allbritton to remain in the courtroom at the suppression hearing while Cloy Evans identified appellant. The trial court's ruling involving Rule 616 was correct. Vivian Allbritton was a victim of the crimes committed against her and her property and therefore had a right to be present under the rule. She was not a witness to the crimes committed against Evan's person and property, and therefore did not have to be excluded as a witness to those crimes.

For his second assignment of error, appellant contends that he was unfairly prejudiced by the deputy prosecutor asking questions about guns and displaying guns to the jury, but he has not brought up a record sufficient for us to review this assignment. The record reflects the following. Appellant was charged with criminal use of prohibited weapons as a result of the officer's discovery of the sawed-off shotguns and the machine gun. At trial, the State asked the officer about the arrest of appellant. Appellant objected and was allowed to question the witness out of the presence of the jury. During the *in camera* hearing, the trial court ruled that the State did not have enough evidence to go to the jury on the charge of possession of illegal firearms, and prohibited any mention of the weapons. The trial court further ordered the prosecutors to remove the weapons from the courtroom. A good while later, at the end of the officer's testimony, appellant's counsel moved for a mistrial and stated that it was "based upon the display of those guns and the mention earlier . . . [a]t the beginning of the officer's testimony of the Uzi and the sawed-off shotguns." The motion was denied.

There is nothing in the record, other than counsel's statement, to indicate that the jurors earlier had heard any testimony about the weapons or that the jurors saw the weapons. It is clear from the record that the Uzi machine gun was in a bag, and the record does not reflect that it was ever taken out of the bag or that the bag was shown to the jury. The police officer testified out of the

hearing of the jurors about the weapons. During the *in camera* hearing there were several references to "these guns," apparently referring to the shotguns, as if the attorneys were looking at them, but the record does not reflect where the guns were before the hearing started. During the hearing the trial judge stated:

> Now, the next question is, on counsel's objection, putting these weapons in front of the jury *which has not been done yet* and presenting these weapons to the jury without sufficient basis, would probably put error in this trial for any other charges that you have. (Emphasis added.)

After the judge made the ruling which prohibited showing or mentioning the weapons, he told the prosecutor to remove the weapons before the jury returned. In sum, appellant has not brought up a record sufficient to show that any of the jurors saw the weapons or heard any comment about them. It is appellant's duty to bring up a record sufficient to show that the trial court erred, and failure to do so results in a waiver of the argument on appeal. *Stewart* v. *State*, 316 Ark. 153, 870 S.W.2d 752 (1994).

Appellant's final point involves the length of the two sentences for aggravated robbery. Appellant is a habitual offender with seven prior convictions. Section 5-4-501 of the Arkansas Code Annotated of 1987 provides in pertinent part:

> (b) A defendant who is convicted of a felony committed after June 30, 1983, and who has been previously convicted of four (4) or more felonies or who has been found guilty of four (4) or more felonies, may be sentenced to an extended term of imprisonment as follows:
>
> (1) For a conviction of a Class Y felony, a term of not less than ten (10) years nor more than life.

Ark. Code Ann. § 5-4-501(b)(1) (Repl. 1993). The jury imposed a sentence of one hundred years for each of the aggravated robbery convictions. The trial court ordered these two sentences and all others, except one, to be served consecutively so that the sentences amounted to a total of three hundred and forty years. Appellant argues that the two sentences for one hundred years each are illegal and excessive because they are longer than he can reasonably be expected to live; therefore, they are "more than life."

*See* Ark. Code Ann. § 5-4-501(b)(1). Apparently, appellant is attacking the sentences as being facially illegal. *See Abdullah* v. *State*, 290 Ark. 537, 720 S.W.2d 902 (1986).

■■ A sentence of "more than life" is defined by this court as life without parole or death. *Malone* v. *State*, 294 Ark. 127, 130, 741 S.W.2d 246, 248 (1987); *see also Franklin* v. *State*, 308 Ark. 539, 825 S.W.2d 263 (1992). Therefore, the two sentences of one hundred years each are within the statutory limits and thus are not facially illegal. *Franklin*, 308 Ark. at 542, 825 S.W.2d at 265. Appellant additionally contends that the foregoing definition violates the Due Process and Double Jeopardy clauses and the prohibition against cruel and unusual punishment of the United States Constitution. However, he made no such argument in the trial court, and we will not consider an argument, even a Constitutional argument, raised for the first time on appeal. *Collins* v. *State*, 308 Ark. 536, 826 S.W.2d 231 (1992).

Affirmed.