Jimmy L. KING *v.* STATE of Arkansas

CR 95-884                                              916 S.W.2d 725

Supreme Court of Arkansas
Opinion delivered February 26, 1996

*Thomas A. Potter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Jimmy L. King appeals his conviction for aggravated robbery and first-degree battery and his sentence of 60 years. He contends that the circuit court erred in refusing to suppress a photo lineup and in-court identification. We conclude that the circuit court ruled correctly, and we affirm.

On April 17, 1993, Tammy Akins, Kristine Barnette (now Templeman), Lynette Oliver, and Kelly Eaves (now Barnette) drove to Fat Jacks Oyster Bar in Texarkana to celebrate Kelly Eaves upcoming marriage. When they arrived, they parked in the last row of parking places. Eaves, who was driving, turned the car off and opened her door to get out. Akins and Barnette were in the back seat. Barnette's door was locked so she reached across Akins and opened her door, while Akins was rummaging through her purse. As the door opened, a man leaned into the car and said, "Give me all your money." Akins responded sharply that the man was not getting her money. The man then put a gun to her chest, and Akins kicked him in the stomach. The man leaned back into the car, shot her, and fled.

Eaves started the car, drove to an E-Z Mart down the street, and called the Texarkana Police Department. Akins did not realize that she had been shot until about an hour later when she began breathing irregularly and was rushed to the hospital. The bullet had pierced her stomach twice before becoming embedded in a mass of muscle.

On April 18, 1993, the day after the shooting, Sergeant Mike Mauldin of the Texarkana Police Department conducted a photographic lineup consisting of several sheets of pictures in which King's picture was included. These lineups were separately shown to Kelly Eaves and Kristine Barnette. Neither could make an identification. On May 11, 1993, these same photographs were shown to the victim, Tammy Akins. She, too, was unable to make an identification.

On May 25, 1993, Tammy Akins was shown a second photo lineup of six photographs, where a different, more recent picture of King was included. All six men photographed had some facial hair. King was the only person included in both lineups. This time Akins tentatively identified King as the person who shot her. This same photo lineup was shown to Kristine Barnette on May 28, 1993, and Barnette positively identified King as the perpetrator.

Based on these identifications, King was charged with aggravated robbery and first degree battery. Prior to trial, King moved to have the photo lineups, as well as any subsequent in-court identification, suppressed on the basis that the pretrial lineups were unduly suggestive. Both motions were denied. At trial, Tammy Akins and Kristine Barnette positively identified King as the offender. King was ultimately convicted by a jury on both counts and sentenced to sixty years imprisonment.

King urges on appeal that the circuit court erred in denying his motion to suppress the pretrial identifications and the in-court identifications by Tammy Akins and Kristine Barnette. He contends that the identifications should have been suppressed because the pretrial identification procedure was unduly suggestive and tainted the later in-court identifications. He then argues that the identifications should have been excluded because they lacked sufficient indicia of reliability. Neither argument has merit.

A pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Monk* v. *State*, 320 Ark. 189, 895 S.W.2d 904 (1995); *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992). But even when the process is suggestive, the circuit court may determine that under the totality of the circumstances the identification was sufficiently reliable for the matter to be decided by the jury. *Neil* v. *Biggers*, 409 U.S. 188 (1972); *Monk* v. *State, supra; Bishop* v. *State, supra.* In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Hayes* v. *State*, 311 Ark. 645, 846 S.W.2d 182 (1993); *Van Pelt* v. *State*, 306 Ark. 624, 816 S.W.2d 607 (1991); *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988); *see also Neil* v. *Biggers, supra.*

King contends that the pretrial photo lineups were unduly suggestive because his photograph was the only one that appeared in two separate lineups, thus suggesting his identification and creating a likelihood of misidentification. Secondly, he contends that the photo spreads were unnecessarily suggestive because of the State's failure to create a lineup consistent with the witnesses' description of the suspect. Both arguments are without merit.

This court is hindered in deciding this issue with respect to the first photo lineup because the photos in the lineup were not preserved by the Texarkana police, with the exception of the photograph of King. Thus, we are unable to determine whether King's photograph from the first lineup was so different from the others as to single him out and, thereby, taint his identification in the second lineup. *See Jackson* v. *State*, 318 Ark. 39, 883 S.W.2d 466 (1994). Nevertheless, in viewing the pictures in the second lineup in conjunction with the photograph of King from the first lineup, we conclude that the process was not unduly suggestive. First, the two photographs of King are differ-

ent. In the second photograph used in the second lineup, his hair is longer, and his moustache is fuller. Moreover, and most importantly, there is nothing in the second lineup which would direct a witness toward King as the primary suspect. In fact, Akins had trouble distinguishing between two of the photographs included in the second lineup when testifying at the suppression hearing. Nor has there been any legitimate insinuation that Sergeant Mauldin sought to influence the identification by the methods he used in presenting the photographs. *See Foster* v. *California*, 394 U.S. 440 (1969). Finally, this court in *Monk* v. *State, supra,* stated that the fact the defendant was the only person included in both a photographic lineup and a physical lineup did not, in itself, render the identification unduly suggestive. *See also Matthews* v. *State*, 313 Ark. 327, 854 S.W.2d 339 (1993). The same rationale should apply here.

King also maintains that the second photo lineup was unduly suggestive because the photographs were not consistent with the witnesses' description of the suspect. This specific argument was not ruled upon by the trial court and thus is not preserved for appeal. *Bowen* v. *State*, 322 Ark. 483, 911 S.W.2d 555 (1995); *State* v. *Torres*, 309 Ark. 422, 831 S.W.2d 903 (1992).

King's final argument is that the identifications were unreliable. Though the bulk of the reliability factors cited above appear to be satisfied, we need not address them because we hold that the process involved was not unduly suggestive. Again, this court will not inject itself into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification. *Bishop* v. *State, supra*; *Moore* v. *State*, 304 Ark. 558, 803 S.W.2d 553 (1991). It was for the jury to evaluate the weakness or strength of the identification testimony, and we cannot say that the circuit court abused its discretion in admitting the evidence. *See Monk* v. *State, supra.*

Affirmed.