James Earl MAYS *v.* STATE of Arkansas

CA CR 96-674                                   944 S.W.2d 562

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered May 21, 1997

*Mikke Connealy Marshall*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. James Earl Mays was charged with the aggravated robbery of Mack's Liquor Store in Blytheville. He was found guilty by a Mississippi County jury and was sentenced by the court to ten years' imprisonment. On appeal Mays contends that the evidence was insufficient to sustain the conviction and that the court erred in denying his motion to suppress testimony related to a photographic line-up. We find no error and affirm.

When reviewing the sufficiency of the evidence on appeal, we do not weigh the evidence but simply determine whether the evidence in support of the verdict is substantial. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). Substantial evidence is that which is forceful enough to compel a conclusion one way or the other and passes beyond mere suspicion and con-

jecture. *Drummond v. State,* 320 Ark. 385, 897 S.W.2d 553 (1995). In determining whether there is substantial evidence, we review the evidence in the light most favorable to the appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Williams v. State,* 321 Ark. 635, 906 S.W.2d 677 (1995). The question of the sufficiency of the evidence to support a conviction is one of law. *Bridges v. State,* 46 Ark. App. 198, 878 S.W.2d 781 (1994).

Appellant's conviction rests primarily on the testimony of two witnesses, Robert Pillow and Joseph Bearden. Robert Pillow was the clerk at Mack's Liquor Store on the day of the robbery. He testified that at about 2:25 or 2:30 p.m. a man entered the store. The man raised his shirt, showing a gun in the front of his pants and said, "You know what I want." When Mr. Pillow realized he was being robbed, he opened the cash register and gave its contents to the man. The man took Pillow to the back of the store and told Pillow that he could not go out the front door. Pillow gave the man his keys. While they were going into the back room the bell went off at the drive-through window. Pillow said, "I need to get that," and the man said, "No, no, just come on." The man tied Mr. Pillow up, went back in the store and got a half-gallon of liquor, and went out the back door. Pillow testified that the man was in the store for five minutes.

The prosecuting attorney asked whether Mr. Pillow got a good look at the person's face and Mr. Pillow answered, "I didn't really pay attention too close because I was scared, I was worried about the gun." Mr. Pillow described the man as black, "medium-skinned," in his mid-thirties, and having a clean-cut moustache. Pillow testified that the man weighed 160 to 180 pounds. Then:

Q. Do you see that person today?
A. Well, that fellow looks like him except he's got, he's got a beard that he didn't have that day.

Pillow testified that he identified the person that robbed him from a four-photograph line-up provided by the police officers. Finally, on direct examination:

Q. All right, sir. Now, do I understand your testimony, are you able to say today that the defendant seated over here is the person except for the facial hair?

A. Yes, sir, he resembles the person very much so except for the facial hair. But, you know, he had, you know, he had a hat on so, you know, from here up, I can't honestly say that that's him. I cannot say that.

Then on cross-examination:

Q. Good afternoon, Mr. Pillow. You say you cannot honestly say that this person seated at counsel table is the person?

A. No, ma'am. He just, he looks like the fellow, but like I said, there was a hat on. And, you know, from here down, yes, ma'am, except without the beard.

At the conclusion of cross-examination:

Q. And if I recall your testimony earlier, you were not certain of the person's identity in the line-up, is that correct?

A. Yes, ma'am.

Q. And you're not certain today of the person's identity, is that correct?

A. Yes, ma'am.

Q. Okay.

Joseph Bearden was a liquor salesman calling on Mack's Liquor Store on the day of the robbery. He testified that between 2:30 and 2:45 p.m. a car pulled up to the drive-through window as he, Bearden, drove up. Bearden knocked on the door and got no response. As he headed back to his car he saw a man come from behind the liquor store. He testified that the man did a "stop- step" like he was going to back up. He positively identified the appellant as the man he saw that day. He testified that "it looked like [the man had] a moustache, but I couldn't tell if there was much of a beard."

Ross Thompson, a Blytheville police officer, testified that he showed a photographic line-up to Mr. Pillow. He testified that Mr. Pillow picked out the photograph of the appellant without hesitation but that Pillow could not unequivocally say that that was the person who robbed him. Officer Thompson also testified

that the photographic line-up had been lost within the police department.

In ruling on the defendant's motion for directed verdict the trial judge said:

THE COURT:

In this case here we have a situation where the victim himself has indicated that he could not positively identify the defendant as the person who robbed him. But on the other hand, he has said in open Court that the defendant resembles the individual that came in the store, that the only difference is that he couldn't identify him because he said he had hair on his face at this point in time. Also when the photo line-up was presented to him that he again made a statement that he couldn't positively identify him, the individual there as being the one that perpetrated that robbery, but there were two pictures there that he indicated that looked almost like twins. But, in fact, he did pick out the defendant as being the person who committed the robbery. That coupled with the statement from Mr. Bearden that he saw the defendant behind Mack's Liquor Store and that upon viewing him first that the defendant halted or paused or acted in a suspicious manner before he moved on down the alleyway.

All of that looked upon in the most favorable light certainly constitutes, in the Court's opinion, substantial evidence enough to allow it to go to the jury. As you know, the Court is not to weigh the evidence, not to decide whether or not it is evidence that even at a preponderance is substantial. And the Court is going to rule that there is substantial evidence and the matter should go to the jury. The motion for directed verdict is denied.

■ ■ We think that the trial court's ruling was correct. The law does not require that a witness's description be totally accurate. *State v. Radford*, 559 S.W.2d 751 (Mo. App. 1977). In *Davis v. State*, 284 Ark. 557, 683 S.W.2d 926 (1985), the supreme court said, "The accuracy of the [victim's] identification of appellant and the alleged weaknesses of that identification were matters of credibility to be resolved by the jury." While Mr. Pillow was not absolutely certain in his identification of appellant as the robber, appellant's conviction does not rest on Mr. Pillow's testimony alone. Under the circumstances the jury could reasonably infer

that the man who robbed Mr. Pillow was the same man seen behind Mack's Liquor Store by Mr. Bearden. Mr. Bearden positively identified the man he saw as the appellant. The circuit judge did not err in denying the motion for directed verdict.

After the State's opening statement appellant asked the court to rule that any references to the photographic line-up would be inadmissible, because the photographs had been lost by the police department. The court denied the motion. We find no error in the court's ruling.

■ Testimony about an out-of-court identification is generally admissible. *See Hilton v. State*, 278 Ark. 259, 644 S.W.2d 932 (1983); *Jacobs v. State*, 316 Ark. 698, 875 S.W.2d 52 (1994). Appellant relies, in part, on *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988). In *Hamm* the supreme court held that when the State lost the tape recording of the defendant's confession it was error to admit the transcription. The court expressly noted, however, that oral testimony about the confession was admissible.

Appellant's reliance on *Bowden v. State*, 297 Ark. 160, 761 S.W.2d 148 (1988), is misplaced. *Bowden* involved a live line-up and the issue of whether the defendant waived his right to counsel. Neither issue is involved in the case at bar.

For the reasons stated the judgment of the trial court is affirmed.

ROBBINS, C.J., and GRIFFEN, J., agree.

NEAL, CRABTREE, and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. While I agree with the majority that the trial court did not err in denying the motion to suppress testimony relating to the photograph lineup, I strongly disagree with the holding that the trial court correctly denied Mays's motion for directed verdict.

The majority has found the following evidence substantial, and thus sufficient to sustain the conviction of James Earl Mays for aggravated robbery of a liquor store: the testimony of the victim, Robert Pillow, who repeatedly failed to identify Mays as the robber in both a photographic line-up and at trial, and the testimony

of Dennis Bearden who positively identified Mays as a man whom he saw coming from the alleyway behind the liquor store around the time of the robbery. Bearden testified that he closely observed Mays as he walked away from the building because he became suspicious of him, and that he "got a good look at him." However, although the victim testified that the robber left wearing a hat and carrying a half-gallon of liquor, and described him as approximately 5′8″ tall, the observant Mr. Bearden made no mention of either a hat or a half-gallon of liquor, and described the person he observed as a little over six feet tall.

The majority holds that the trial court correctly denied Mays's motion for directed verdict because "the law does not require that a witness's description be totally accurate," relying upon a Missouri case, *State v. Radford*, 559 S.W.2d 751 (Mo. App. 1977) and *Davis v. State*, 284 Ark. 557, 683 S.W.2d 926 (1985), for the propositions that a witness's description need not be totally accurate, and that weaknesses in the *victim's* identity of the accused are matters of credibility for the jury to resolve. However, in both *Radford* and *Davis*, the victims positively identified the accused in a pretrial line-up and at trial. In *Radford*, there was a discrepancy in the defendant's height and the estimation of height reported by the victim; the victim in *Davis* was unsure at the trial held six years after the robbery whether Davis had been wearing a beard. The majority's reliance upon *Radford* and *Davis* is clearly misplaced.

Even more troubling is the majority's failure to address Mays's argument concerning the circumstantial nature of the evidence. Since no one identified Mays as the robber, the case against him was entirely circumstantial. It is well settled that the fact that evidence is circumstantial does not render it insubstantial. *Tucker v. State*, 50 Ark. App. 203, 901 S.W.2d 865 (1995). To constitute substantial evidence in a criminal trial, however, circumstantial evidence must exclude every other reasonable hypothesis consistent with the appellant's innocence, and the factfinder must not be left to speculation and conjecture. *Carter v. State*, 324 Ark. 395, 921 S.W.2d 924 (1996); *Knight v. State*, 51 Ark. App. 60, 908 S.W.2d 664 (1995). Although the question of whether circumstantial evidence excludes every other reasonable hypothesis other than the accused's guilt is usually for the jury, *see Abbot v.*

*State*, 256 Ark. 558, 508 S.W.2d 733 (1974), on appellate review, the reviewing court considers whether the evidence was in fact sufficient to exclude all other reasonable hypotheses. *Dixon v. State*, 311 Ark. 613, 846 S.W.2d 170 (1993). Two equally reasonable conclusions regarding what occurred merely give rise to a suspicion of guilt, and that is insufficient as a matter of law to sustain a criminal conviction. *Carter v. State, supra.*

Here, even the evidence that supports the conviction presents two equally plausible hypotheses: either Mays was the person who committed the robbery, or he was, unluckily for him, simply in the wrong place at the wrong time. Consequently, the jury had to resort to speculation and conjecture to convict Mays of this crime, and I would reverse and dismiss.

NEAL and CRABTREE, JJ., join in this dissent.