Cite as 2019 Ark. App. 475

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-19-140

| | |
|---|---|
| CHAVEL TERELL JEMISON | **Opinion Delivered:** October 23, 2019 |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-17-94] |
| V. | |
| STATE OF ARKANSAS | HONORABLE CARLTON D. JONES, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

Chavel Jemison was tried by a jury and found guilty of the offenses of commercial burglary and aggravated robbery. He was sentenced to 660 months in the Arkansas Department of Correction, which included an enhancement of 180 months for use of a firearm in the commission of a felony. In this appeal, he contends the trial court erred: (1) in denying his motion to suppress evidence obtained from the vehicle; (2) in permitting hearsay testimony; and (3) in permitting a tainted in-court identification. We affirm.

On January 9, 2017, two incidents of aggravated robbery and commercial burglary involving two suspects occurred at two different convenience-store locations in Texarkana. Jemison and another young man were arrested. Jemison does not challenge the sufficiency of the evidence supporting his two convictions. It is therefore unnecessary to develop the facts extensively except as they relate to the specific arguments raised.

## I. *Motion to Suppress*

For his first point of appeal, Jemison contends the trial court erred in denying his motion to suppress evidence obtained from his vehicle, specifically two packages of Newport cigarettes, because (1) the warrant was a general warrant; (2) alternatively, the cigarettes were outside the scope of the warrant; (3) the warrant was an unjustified nighttime warrant; and (4) reliance on the doctrine of inevitable discovery was erroneous.

Generally, when reviewing a trial court's denial of a motion to suppress evidence, the appellate court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts *give rise to reasonable suspicion or probable cause*, giving due weight to the inferences drawn by the trial court. *Bathrick v. State*, 2016 Ark. App. 444, 504 S.W.3d 639. Here, however, Jemison no longer challenges the underlying probable cause to support the search warrant. Instead, his basic challenge is to the language of the search warrant itself—arguing overall that the language is too general and therefore does not satisfy the particularity requirement of the constitution. Alternatively, he argues even if the search warrant was "particular" enough, the Newport cigarettes fell outside the scope of the warrant. He then further argues that the warrant allowed for an unjustified nighttime search and that the trial court erred in relying on the inevitable-discovery doctrine.

In *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Massachusetts v. Sheppard*, 468 U.S. 981 (1984)), the Supreme Court explained the Constitution's particularity requirement for search warrants:

> The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is

2

unconstitutional. That rule is in keeping with the well-established principle that "except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant."

(Citations omitted.) Rule 13.2 of the Arkansas Rules of Criminal Procedure provides, in part: "(b) The warrant shall state, or describe *with particularity*: . . . (iv) the persons or things constituting the object of the search and authorized to be seized[.]" (Emphasis added.) While both the Constitution and Rule 13.2 (b)(iv) require that a warrant describe objects with particularity, highly technical attacks on search warrants are not favored lest police officers are discouraged from obtaining them. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987). The tension therefore lies between the constitutional requirement for particularity and the judicial recognition that reviewing courts should not be hypertechnical in assessing the validity of a search warrant.

Here, the search warrant provided in pertinent part:

[T]here is now being concealed, conducted, or possessed, namely guns, ammunition, clothing, currency, ammunition (live and spent shells), cellular phone, electronic devices, blood, and *trace evidence as well as any other items that may contain blood transfer or trace evidence*, *as well as paraphernalia associated with the possession of evidence of Attempted Capital Murder and Aggravated Robbery, and any articles thereof, including, but not limited to*, books, records, currency, electronic devices, and *articles of identification*, which are being possessed . . . and as I am satisfied that there is probable cause to believe that the property so described is being concealed in the vehicle above described [white 2000 Lincoln Town Car four door passenger vehicle bearing Texas license plate # GZG-3933] and that the foregoing grounds for application for the issuance of the search warrant exist.

(Emphasis added.) It is undisputed that the search warrant did not specifically list cigarettes, much less Newport cigarettes. To be covered by the search warrant, therefore, the cigarettes would have to fall within the emphasized language. Jemison contends the search warrant was so generalized that it encouraged the officers executing it to use their discretion and

3

"effectively seize anything they desired," thereby rendering the entire warrant invalid. Detective Kirkland candidly acknowledged that "trace evidence" could mean nearly anything that had or was believed to have fibers or DNA and that "paraphernalia associated with the possession of evidence of Attempted Capital Murder and Aggravated Robbery" was up to him to decide and fully within his sole discretion or the discretion of the officer executing the warrant.

The emphasized portions of the search warrant, especially when coupled with Kirkland's testimony, are problematic at best. They do not model the particularity envisioned by the framers because they undeniably leave a great deal of discretion with the officers—a fact candidly confirmed by Officer Kirkland. Our de novo review of the warrant and surrounding circumstances convinces us that the designated portions of the warrant do not satisfy the constitutional requirements for particularity, and that is the only language within the warrant that could arguably cover the cigarettes. Consequently, we hold that the seizure of the cigarettes was not justified by the search warrant's language.[1] However, that does not end our inquiry.

The circuit court's October 2, 2018 order denying Jemison's motion to suppress was primarily based on its conclusion that the warrant was supported by probable cause—a ruling not challenged on appeal. In addition, the circuit court stated its agreement with the State that the vehicle Jemison was driving would have been inventoried pursuant to Rule 12.6

---

[1]Because we conclude that the search warrant was invalid with respect to the cigarettes, it is not necessary to address Jemison's alternative argument that the warrant was invalid because it allowed for a nighttime search when such a search was not justified under the circumstances of this case and had not even been sought by the police. The harmless-error analysis nevertheless applies to both arguments.

4

of the Arkansas Rules of Criminal Procedure and its contents inevitably discovered.[2] Jemison asserts on appeal that the circuit court erred in relying on the inevitable-discovery doctrine as an alternative basis for denying his motion to suppress. We acknowledge the circuit court's alternative "inevitable-discovery" basis for its decision; however, we need not address it because our review of this case convinces us that any error was harmless beyond a reasonable doubt.

The denial of a motion to suppress can be harmless error when the evidence of guilt is overwhelming and the error is slight, or the appellate court concludes beyond a reasonable doubt that the error did not contribute to the verdict. *Livingston v. State*, 2013 Ark. 264, 428 S.W.3d 474. In applying this doctrine, we must exclude the improperly admitted evidence and examine the remaining evidence. *Id.* We hold that the circuit court's failure to suppress the Newport cigarettes constituted harmless error.

A person commits aggravated robbery if he or she commits robbery as defined in Arkansas Code Annotated section 5-12-102, and the person is armed with a deadly weapon, represents by word or conduct that he or she is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2013). A person commits commercial burglary if he or she enters or remains unlawfully in a commercial occupiable structure of another person with the purpose

---

[2]The court's written order did not address all of Jemison's arguments for suppression. During a pretrial hearing, Jemison clarified for the record that the circuit court was denying the motion to suppress "in all respects to the arguments that were made in the post-hearing brief."

of committing in the commercial occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201 (Repl. 2013).

Excluding the cigarettes, the jury nevertheless had overwhelming evidence of guilt before it. Two convenience stores, the 71 Express Exxon and the Circle K, were robbed by two individuals wearing red bandanas across their faces. Antwon Burris, the clerk from the Circle K, identified Jemison as the individual who pointed a gun at him and pulled the trigger, but the gun jammed. Burris then wrestled with the individual to gain control of the gun and punched the person in the face. Officer Kirkland identified Jemison from surveillance video from the 71 Express Exxon store recorded earlier on the day of the robberies, wherein Jemison was seen walking around the store but not purchasing anything, wearing red shoes and a red belt, and driving a white Lincoln Town Car. Videos of the robberies at both stores showed the presence of a white Lincoln Town Car. When Jemison arrived at the police station voluntarily to be interviewed on January 10, 2017, the day after the robberies, he had a black eye, wore a red belt similar to the one seen in the video, and was driving a white 2000 Lincoln Town Car. Kirkland looked in the vehicle and saw two red bandanas and a jacket in the backseat that he recognized from the surveillance video of the robberies. Jemison was arrested, and the search of the vehicle revealed ammunition of the type used by the gun recovered at the Circle K and two red bandanas, one of which contained Jemison's DNA and the other that contained the second suspect's DNA.

The error in failing to suppress the cigarettes in this case was slight compared to the overwhelming evidence supporting Jemison's convictions for aggravated robbery and

6

commercial burglary. We hold beyond a reasonable doubt that this error did not contribute to the jury's verdicts.

## II. *Hearsay*

Jemison next contends the circuit court erred in permitting the State to introduce hearsay evidence. Specifically, he argues the court erred in allowing investigating officers to use hearsay testimony to trace the gun used in the robbery to him. That is, testimony from officers was introduced to explain that the gun's serial number led them to a pawn shop, which reportedly sold the gun to someone named Eric Adams; that Eric Adams sold the gun to an unknown black male; and that a man named Chris Rodriquez identified Jemison as the person to whom he arranged for Adams to sell the gun.

We review evidentiary rulings under an abuse-of-discretion standard, and we do not reverse absent a manifest abuse of that discretion and a showing of prejudice. *Dickey v. State*, 2016 Ark. 66, 483 S.W.3d 287. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). An out-of-court statement is not hearsay if it is offered, not to prove the truth of the matter asserted, but to show the basis of action or course of conduct. *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994); *Bliss v. State*, 282 Ark. 315, 668 S.W.2d 936 (1984).

A brief summary of the procedural history at trial reveals that the portion of this issue preserved for appeal is limited. When the hearsay objections were first made and ruled on, the State reported to the trial court that it fully intended to call the hearsay witnesses, i.e., the persons whose statements were being reported, to testify at trial. The trial court explained that officers very often rely upon hearsay to direct their next steps and stated that the officers could report what they did after speaking with these witnesses, but they could not report what the witnesses told them. Jemison maintained a continuing objection. Ultimately, the State was not able to produce the witnesses, and additional arguments were then heard and ruled on by the circuit court. Jemison summarized his position as follows:

> To make the record clear, number one, I believe the State witnesses told the jury that a pawn shop sold the gun to Eric Adams. That was based on hearsay. No one from the pawn shop came and testified. That was based on records that were not introduced and it was purely hearsay. The second testimony . . . in that connection that was elicited was the State witnesses told the jury that Eric Adams said he sold the firearm to an unknown black male. That was hearsay. That was introduced. Eric Adams did not testify in this trial. The third, the third piece of evidence in that chain, the State witnesses told the jury that Chris Rodriquez identified the person that he facilitated the sale to as Chavel Jemison. That additionally was a layer of hearsay that was introduced in this trial. Both individually each one of those links and cumulatively the introduction of this has been improper and severely prejudiced my client as it connects him with the weapon found.

Briefly summarizing further colloquy among the court and counsel, Jemison's counsel explained that if it were up to him, he would seek a mistrial, but his client did not want him to do so. Instead, he sought clarifying instructions. He asked the court to instruct the jury that the State did not connect the firearm to his client and that any statements attributed to Eric Adams and Chris Rodriquez should be disregarded. He also asked that the State not be allowed to assert any connection between Jemison and the gun in closing argument. The State argued that the testimony was not hearsay because it merely showed

the basis for police action. *See Martin, supra.* Jemison countered with a confrontation argument he had earlier raised. The trial court subsequently reconsidered its ruling and, based on Jemison's Confrontation Clause argument, reversed itself regarding the officers' testimony as it related to any evidence that they obtained concerning the transfers of the firearm, stating it could not be argued for the truth of the matter asserted, only for what actions the officers took as a result of obtaining the information. The court told Jemison's counsel it would give an instruction in that regard if he wanted it, which he did. The court then instructed the jury in that manner[3] and asked counsel if the instruction was sufficient. Counsel asked for a sidebar, during which he stated "I'm not going to say on the record it's sufficient. I would further like the court to instruct them that the State did not prove the connection and I understand . . . the Court was denying that request." To which the court responded, "Yes."

On appeal, Jemison contends the trial court abused its discretion because the State was repeatedly permitted to elicit hearsay testimony from investigating officers tracing the gun back to Jemison. He asserts that the State, without a legitimate basis for doing so, made overt representations to the circuit court that the hearsay witnesses would testify at trial. When the State was unable to actually present those witnesses, he argues it was impossible to cure the error. He further argues that the evidence tracing the gun to Jemison was "the worst evidence in the entire trial," that the error was not slight, that the evidence was far

---

[3]"Ladies and gentlemen, earlier during testimony of the officers as it related to their efforts in tracking the gun, those statements and testimony by the officers are only to be considered by you not for the truth of the matter asserted, but merely the steps that were taken by the officers during the investigation."

from overwhelming, that the jury instruction (see footnote 3) did not cure the prejudice, and that this court should therefore reverse and remand for a new trial. We hold there was no abuse of discretion in the way the trial court handled this evidence.

We first note that Jemison's counsel specifically waived the pursuit of a mistrial below because his client did not want one. The only remedy left to the circuit court once it became clear the witnesses would not be present to testify was to instruct the jury on what they could and could not consider. The trial court offered that remedy to Jemison, and he accepted. The jury was instructed not to consider for the truth of the matter asserted the officers' statements and testimony related to tracking the gun. Instead, the statements and testimony could be considered only to show the steps taken by the officers during their investigation. Jemison did not give the instruction his blessing but neither did he offer an alternative instruction. He did ask the court to further instruct the jury that the State did not prove a connection between Jemison and the gun and to prohibit the State from making that argument in closing statements. The trial court denied those requests. Thus, Jemison did not seek a mistrial below, and he was granted a portion of one of his requests when the court instructed the jury that the officers' testimony tracing the gun's path could not be considered for the truth of the matter asserted but could be considered to understand the officers' course of conduct.

Here, the officers explained how they traced the gun found at the scene of one of the robberies back to Jemison. The trial court found Jemison's Confrontation Clause argument convincing and instructed the jury that the officers' challenged testimony was not to be considered for the truth of the matter asserted but that it could be considered to explain

10

the investigative steps taken by the officers. There was no abuse of discretion in fashioning this remedy once it was clear the witnesses would not be present to testify. Neither was there an abuse of discretion in denying Jemison's additional request to instruct the jury that the State had not proved a connection between the gun and Jemison and to prohibit the State from making that argument in closing statements. Whether the gun was sufficiently connected to Jemison constituted a question of fact that the trial court properly left to the jury to decide. *See Marshall v. State*, 2017 Ark. 347, 532 S.W.3d 563.

## III. *In-Court Identification*

For his final point of appeal, Jemison contends the trial court erred in permitting a tainted in-court identification and neither granting a mistrial nor striking the testimony. In particular, Jemison argues that the trial court erred in allowing Antwon Burris to identify him in court because the identification was rendered unreliable by an unnecessarily suggestive out-of-court photo identification. We disagree.

Here, Burris identified Jemison in court as the person who had pointed a gun at him and pulled the trigger during the robbery of the convenience store where he clerked. Burris then testified about the pretrial photos he saw of Jemison. His testimony was undeniably confusing and contradictory. He first testified that he was called in by the police after Jemison had been arrested to see if he recognized the perpetrator. He said he was shown one photograph, and he confirmed it was the person who had robbed the store. He also testified that a year after the robbery, the police told him Jemison's name, and he looked him up on Facebook and saw photos of him. Burris was allowed to take a break at trial, and during the recess, Jemison's counsel moved for a mistrial or, alternatively, to strike

Burris's identification of Jemison, arguing that it had been tainted by an unduly suggestive pretrial-identification process. The State argued that Burris was just confused and that further questioning would clarify the matter.

When Burris returned to the stand, he explained that a detective had come to his house a couple of months after the robberies and had given him a subpoena to appear in court. He stated that the first time he had seen Jemison's name was on the subpoena, and that was when he looked him up on Facebook. He said no police officer had ever shown him a photograph of Jemison, and the first time he saw a photograph of Jemison aside from his own Facebook search was when the prosecutor's office showed him one during trial preparation. On cross-examination, Burris acknowledged that his testimony after the break and after talking to the prosecutor differed from the testimony he had given before the break. He stated he was very nervous, and that accounted for the confusion. He denied that the prosecutor had told him to lie or change his story. Court adjourned for the day, and the judge said he would consider the defense motions overnight.

The next morning, the circuit court denied the request for a mistrial, explaining that it was a drastic remedy and the facts did not justify it. The court further explained that Jemison's counsel was able to explore the weaknesses of Burris's identification to a great extent on cross-examination and that it had become an issue of witness credibility for the jury rather than an issue of improper out-of-court identification.

It is the defendant's burden to demonstrate that a pretrial-identification procedure was so suggestive as to taint subsequent identifications; only then does the State bear the burden of proving that the subsequent identification was reliable. *Shuffield v. State*, 23 Ark.

App. 167, 745 S.W.2d 630 (1988). Moreover, our supreme court has held that even when the pretrial-identification procedure is impermissibly suggestive, the circuit court may determine that under the totality of the circumstances, the identification was sufficiently reliable for the matter to be submitted to the jury, and then it is for the jury to decide the weight the identification testimony should be given. *King v. State*, 323 Ark. 558, 916 S.W.2d 725 (1996). In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial-identification procedure. *Id.*

On appeal, Jemison argues that whichever version of Burris's testimony one believes, it was clear that the State, whether acting as a law-enforcement officer or as a prosecutor, showed Burris a single photograph and suggested that it showed the individual who robbed the stores. He asserts this court should find that the pretrial identification was "unnecessarily suggestive." He further argues that the in-court identification was not reliable in spite of the tainted pretrial identification and that it should have been struck or a mistrial granted. As noted by the State, the usual remedy for an unduly suggestive pretrial identification is the suppression of an in-court identification.

The law does not require that a witness's description be totally accurate. *Mays v. State*, 57 Ark. App. 282, 944 S.W.2d 562 (1997). The accuracy of the victim's identification and the alleged weaknesses of that identification are matters of credibility to be resolved by

13

the jury.  *Id.*  It is for the trial court to determine if there are sufficient aspects of reliability present in an identification to permit its use as evidence.  *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483.  It is then for the jury to decide what weight that identification testimony should be given.  *Id.*  We do not reverse a ruling on the admissibility of an identification unless it is clearly erroneous, and we will not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of misidentification.  *Id.*

Here, the circuit court made no findings on the reliability factors discussed above, and we have been unable to determine that the court was asked to do so.  We are not convinced Jemison satisfied his burden of demonstrating that an unduly suggestive pretrial-identification process was employed by the State.  However, even if the pretrial-identification process was unduly suggestive, we conclude there was sufficient indicia of reliability to admit Burris's in-court identification.  Burris did not have a fleeting encounter with the individual who robbed the store; that individual pointed a gun at Burris and pulled the trigger; the gun did not fire; and Burris then wrestled with the man for the gun and punched him in the face.  Burris attributed any discrepancy in his description of Jemison, i.e., whether Jemison was light complected or dark complected, to the store's lighting, and any height discrepancy to the fact that both suspects were somewhat hunched over.  No other person was identified by Burris prior to any alleged pretrial-identification procedure, and although Burris's testimony about pretrial photographs was conflicting and confusing, he had no apparent hesitation in identifying Jemison at trial.  There was no indication Burris had at any time failed to identify Jemison.  According to Burris, he first saw a photo of

Jemison a couple of months after the robberies when he first learned Jemison's name after seeing it on a subpoena, and—on his own initiative—looked up Jemison on Facebook.

Identification is normally a matter to be decided by the trier of fact, and the circuit court is granted wide latitude. *See McGee v. State*, 280 Ark. 347, 658 S.W.2d 376 (1983). Here, the court's ruling indicated that it believed the defense had sufficiently put Burris's credibility into question and that it was a matter for the jury to decide. Considering the totality of the circumstances presented in this case, we have concluded there is not a substantial likelihood of misidentification, and we find no clear error in the circuit court's decision to allow Burris's in-court identification of Jemison to stand.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.