Cite as 2023 Ark. App. 211

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-22-327

| | | |
|---|---|---|
| GARY MURPHY | | Opinion Delivered April 12, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-21-202] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE ROBERT B. GIBSON III, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Gary Don Murphy appeals the Drew County Circuit Court's convictions by a jury of two counts of rape, a Class Y felony, and sentence of forty years on each count to run consecutive to each other. On appeal, he argues three points for reversal: (1) there was insufficient evidence to support the conviction; (2) the circuit court erred by not allowing him to cross-examine Officer Harvey regarding statements the victim, Minor Child (MC), allegedly made concerning her prior knowledge of a vibrator; and (3) the introduction of his alleged sexual assaults on his two cousins was more prejudicial than probative. We find no error and affirm.

Gary Don Murphy's fourteen-year-old daughter, MC, testified that in April 2021, Murphy told her to put on her shoes and walked her to a camper in his backyard. Murphy then told MC to get inside the camper, take off her clothes, and lie down on the fold-out

bed. Murphy followed MC inside the camper, took off his own clothes, lay down on top of her, and put his penis inside of her. MC later disclosed to a friend that Murphy regularly forced her to have sex with him. Her friend's mother overheard the disclosure and reported the rapes. The State subsequently charged Murphy with two counts of rape, and the case proceeded to trial.

Officer Rick Harvey of the Drew County Sheriff's Office investigated Murphy's alleged rape of MC. Officer Harvey interviewed Murphy and other witnesses and collected evidence. During the investigation, Officer Harvey located a bag containing, among other things, used condoms, a cup, and some paper items inside the camper in Murphy's backyard where MC had told officers she was taken for sex. Officer Harvey also located a purple vibrator in Murphy's bedroom that was found where MC said it was stored. Murphy gave a statement to Detective Harvey that he and MC's mother had divorced ten years previously, and for a long time after the divorce, he was allowed only one weekend of supervised visitation a month. He explained that the parties' divorce decree provided that Murphy have only supervised visitation. Murphy alleged that this restricted supervised visitation was probably because his wife knew about the allegations that he sexually assaulted his two cousins and had been sent to a place in Texas presumably for rehabilitation. Over the years, however, the monthly visitation with MC was relaxed by agreement of the parties, and Murphy began to have supervised visitation every other weekend.

MC testified that Murphy began touching her sexually when she was about five years old and began having penetrative sex with her when she was seven or eight years old,

2

continuing to do so almost every weekend she visited until the sexual acts were reported to her mother. She further testified that Murphy routinely had sex with her in his room, in his mother's bathroom, or in a camper behind his home, both at night and during the day, when no one else was at the house.

MC testified that on some occasions, Murphy would make her get on her hands and knees and bend over or have her get on top of him; on other occasions, he would use his hands, mouth, or a vibrator to penetrate her. Sometimes the sex would last awhile, but other times it would be just a few minutes. She testified that having sex with Murphy hurt, but if she did not do as Murphy ordered, "he would make it hurt worse" and "tell her not say 'ow' or move."

Christopher Glaze, a DNA analyst at the Arkansas State Crime Laboratory (ASCL), later confirmed the presence of Murphy's DNA on the inside of the used condom and MC's DNA on the outside and at least three people's DNA on the vibrator. Glaze also confirmed that, while DNA transfer is possible any time two items—such as a cup and a condom—come into contact, the presence of MC's and Murphy's DNA on the condom tested was more consistent with sexual contact than coincidental brushing because of the amount of DNA.

Murphy called several witnesses who testified that there was no way he could have sexually assaulted MC because he was never alone with her. Murphy also testified on cross-examination that he had never been alone with MC because "there's always somebody that's been there with me." As a result, the State sought to admit his statement to Officer Harvey contradicting his statement that he was never alone with MC. A portion of the video

3

statement, not including his statement regarding the molestation of his cousins and his reasons for restricted visitation, was allowed by the court. The statement included Murphy's admission that he had picked her up for visitation alone "some." Further, it showed that he would work late at night and come into the house around three or four o'clock in the morning. MC did not have her own bedroom, so she was sleeping in the living room on a couch or on a blow-up bed. The defense witnesses agreed on cross examination that they could not know what was happening while they were asleep.

I. *Sufficiency of the Evidence*

The State charged Murphy with two counts of rape, a Class Y felony. Count one alleged that between February 1 and April 29, 2021, Gary Don Murphy, MC's parent, engaged in sexual intercourse or deviant sexual activity with MC, a minor. Count two alleged that between April 20, 2019, and April 20, 2020, Murphy engaged in sexual intercourse or deviant sexual activity or the rape of a minor who was less than fourteen years of age. To convict Murphy of the first count, the State had to prove that he "engaged in sexual intercourse or deviate sexual activity with" MC, who was a minor, and that Murphy is her parent. Ark. Code Ann. § 5-14-103(a)(4)(A)(i) (Supp. 2021). This count carries a possible penalty range of ten to forty years, or life, in the Arkansas Department of Correction if found guilty. To convict Murphy of the second count, the State had to prove that he "engaged in sexual intercourse or deviate sexual activity with" a minor victim "who was less than 14 years of age." Ark. Code Ann. § 5-14-103(a)(3)(A). This count carries a sentence range of twenty-five to forty years, or life, in the Arkansas Department of Correction if found guilty. Sexual

intercourse means the penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(12) (Supp. 2021). Deviate sexual activity "means any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person or of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A)–(B).

The standard of review for a sufficiency-of-the-evidence challenge is well established; this court views the evidence in the light most favorable to the State and considers only evidence that supports the verdict. *See, e.g.*, *Carter v. State*, 2010 Ark. 293, 367 S.W.3d 544; *Hillman v. State*, 2019 Ark. App. 89, at 2, 569 S.W.3d 372, 374. We will affirm a verdict if there is substantial evidence to support it. *Id.* Substantial evidence is that which is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or another, without resorting to speculation or conjecture.

A rape victim's testimony alone can constitute substantial evidence to support a rape conviction. Ark. Code Ann. § 5-14-103(a)(1). A victim's testimony alone provides sufficient evidence to support a sexual-assault charge, and the victim's testimony does not need to be corroborated. *Brown v. State*, 2010 Ark. 420, 378 S.W.3d 66; *Bryant v. State*, 2010 Ark. 7, at 8, 377 S.W.3d 152, 158.

Murphy states two reasons the evidence is insufficient to convict him. First, Murphy contends that the victim's testimony was inconsistent as to when and how often he had sex with her. This argument is without merit because this court has held that lack of specificity

5

with regard to the date of a rape does not require a reversal, especially when the victim is a child. *Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992). The lack of memory of a young child to remember the exact date when she was first molested is a matter of credibility as is the victim's inability to recall the number of and specific times she was forced to submit to sex as she got older. In this case, MC was able to give a range of time that was sufficient under the law for a rape conviction, including the rapes that happened in the years prior to her turning fourteen and the rape that occurred in April 2021 after she turned fourteen.

Second, Murphy challenged the findings of the ASCL analyst by attempting to show that MC's DNA could have been transfer DNA from other items found inside the bag and did not prove that he had sexual relations with her. The jury was free to reject his assertion that MC's DNA was transfer DNA from another item inside the bag. Murphy relies on *Snow v. State*, 2018 Ark. App. 612, 568 S.W.3d 290, for the proposition that circumstantial evidence may constitute substantial evidence to support a conviction but only if it excludes every other reasonable hypothesis other than the guilt of the accused. His reliance on *Snow* is misplaced, however, because Snow's guilt was not established solely by circumstantial evidence but by both direct and circumstantial evidence.

In considering the testimony in the light most favorable to the State, there was substantial evidence to support the jury's determination of guilt. MC testified that her father, Murphy, had raped her on the two occasions charged in the information. MC testified that appellant had sex with her on many occasions, beginning with touching at about age five until sexual penetration at about age seven or eight and continuing until her outcry when

6

she was fourteen years old. MC stated that this sexual activity would occur almost every weekend when she was having visitation with her father. This sexual activity continued until she disclosed to a friend that she was forced to have sex with her father, and her friend's mother, who overheard the conversation, notified MC's mother. MC went into detail as she described how Murphy "would make her get on her hands and knees, and bend over, or have her get on top of him," or use "his hands, mouth, or a vibrator" to penetrate her. She testified that unless she did as Murphy ordered, "he would make it hurt." MC testified that he had used condoms at times when he had sex with her.

On the basis of MC's statement, the investigator searched and found a used condom in the camper where she stated he would take her for sex. Testing of the condom for DNA by the ASCL analyst, Christopher Glaze, confirmed the presence of Murphy's DNA on the inside of a condom and MC's DNA on the outside of the condom. The DNA of three persons was on the vibrator, but because the DNA was corrupted, the results were unreliable, so they were inconclusive.

Thus, MC's testimony was corroborated by physical evidence. However, a rape victim's testimony need not be corroborated, and scientific evidence is not required. *See Breeden v. State*, 2013 Ark. 145, 427 S.W.3d 5; *Jones v. State*, 300 Ark. 565, 780 S.W.2d 556 (1989). This court has repeatedly held that a rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *See Breeden*, 2013 Ark. 145, 427 S.W.3d 5. Moreover, it is the function of the jury, and not the reviewing court, to evaluate the credibility of witnesses

and to resolve any inconsistencies in the evidence. *See Id.* Here, MC said that Murphy put his penis "inside" her and was on top of her, and while he was inside her, "would have her bend over and he would be behind her"; he also made her get on her hands and knees at times and used a vibrator, his mouth, and his hands on other occasions. The jury could conclude, without resort to speculation, that this was a child's description of sexual intercourse. *Stewart v. State*, 297 Ark. 429, 762 S.W.2d 794 (1989). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270.

The appellate court does not weigh the evidence presented at trial or assess the credibility of the witnesses because those are matters for the finder of fact, which is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Lashley v. State*, 2021 Ark. App. 31, 615 S.W.3d 408; *See also Hillman v. State*, 2019 Ark. App. 89, 569 S.W.3d 372. We hold that there is substantial evidence to support the convictions and affirm.

## II. *Hearsay Objection*

Murphy's second point on appeal relates to a question he asked during cross-examination of Detective Harvey. Officer Harvey was asked, "Did you ask [Murphy] if [MC] was aware of the vibrator?" The State objected to the question, arguing that to elicit from the officer what Murphy told him was hearsay. Hearsay is a statement, other than one made by

8

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2020). An out-of-court statement is not hearsay if it is offered, not to prove the truth of the matter asserted, but to show the basis of action or course of conduct. *Jemison v. State*, 2019 Ark. App. 475, at 8, 588 S.W.3d 359, 365. Specifically, we have stated that an appellate court will not reverse a circuit court's ruling on a hearsay question unless the appellant can demonstrate an abuse of discretion. *Chatfield v. State*, 2013 Ark. App. 565. The circuit court found Murphy was the declarant and the proponent of the evidence, which he admitted was "offered against the state's case." Thus, by the plain language of the rule, the statement was not an admission of a party opponent but, instead, was hearsay. We hold that the evidence was properly excluded on that basis and affirm. Ark. R. Evid. 801(c), 801(d)(2)(i), 802; *see Miles v. State*, 59 Ark. App. 97, 954 S.W.2d 286 (1997).

### III. *Admission of Evidence of Prior Sexual Misconduct*

Appellant alleges that the circuit court allowed the admission of evidence of his prior sexual assaults and that doing so was an error. Appellant urges that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence under Ark. R. Evid. 403. Even though his recitation of the rule is accurate, it is not applicable in this case since the error he complains of did not occur. An examination of the trial transcript shows that the issue of his prior sexual assault was discussed at a bench conference but never introduced or

9

discussed before the jury. The record is clear that his allegation that inadmissible evidence of sexual assaults was admitted over his objection is without merit.

Murphy argues that it was an error to allow a portion of the video of Murphy's statement to be played that contradicted his testimony on cross-examination regarding being alone with MC and that it revealed that he had supervised visitation. Murphy contends that allowing the testimony regarding supervised visitation simultaneously allowed the reason for the supervised visitation into evidence, that reason being that he had previously been accused of sexually assaulting two of his cousins when he was a child. Although Murphy gave a statement to Officer Harvey regarding the reason for his supervised visitation, the portion of the video statement discussing the prior sexual assaults was never played before the jury.

During a pretrial hearing, the State agreed that, unless Murphy testified at trial and contradicted statements made to Officer Harvey, it would not introduce Murphy's admission that "when he was 10, he was accused of molesting his cousins." Under the same conditions, the State also agreed that it would not introduce Murphy's admission that he violated the supervised-visitation requirements in his divorce decree. However, Murphy testified on cross-examination that he had never been alone with MC because "there's always somebody that's been there with me." As a result, the State sought to admit his statement contradicting his statement that he was never alone with MC. The video statement was allowed by the court for that purpose, and the following portion of the video statement was played for the jury:

MURPHY:          When we got divorced, my lawyer from there turned around and put ~ made sure my ~ the ~ being with my daughter during weekends and stuff ~ visitations was supervised.

10

| | |
|---|---|
| OFFICER HARVEY: | He wanted supervised visitations? |
| MURPHY: | Right. |
| OFFICER HARVEY: | So when you pick her up, is it – |
| MURPHY: | I mean, yeah, sometimes ~~ |
| OFFICER HARVEY: | ~ you're by yourself a lot of times ~~ |
| MURPHY: | Yeah, some. |
| OFFICER HARVEY: | ~ so you're supposed to always have supervised visitation? |
| MURPHY: | Yeah, I did mess up on that. I should have had somebody with me or had someone ~ my aunt, or my sister, or someone like that ~. |

Murphy urges that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Here, a central issue in this case, other than the establishment of the rape itself, was whether appellant had the opportunity to be alone with MC to perpetrate the rape. Murphy and his witnesses maintained that in ten years, he had never been alone with MC. This untruthful statement opened the door for the State to impeach his testimony with the prior statement he had made to Detective Harvey.  Since *Walder* was decided, we have recognized the propriety of "fighting fire with fire" when one of the parties opens the door with an untruthful statement. *See Walder v. United States*, 347 U.S. 62 (1954); *Porter v. State*, 308 Ark. 137, 823 S.W.2d 846 (1992); *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994).When reviewing a circuit court's ruling under Rule 403, this court applies an abuse-of-discretion standard. *Flannery v. State*, 362 Ark. 311, 208 S.W.3d

187 (2005). Reviewing a circuit court's ruling under Rule 403, we have noted that "it is likely that evidence offered by the state will be prejudicial to the accused, or it probably would not be offered"; however, the evidence should not be excluded unless the accused can show that the evidence lacks probative value in view of the risk of unfair prejudice to the defendant. *Beed v. State*, 271 Ark. 526, 542, 609 S.W.2d 898, 909 (1980). This court reviews a circuit court's ruling under Rule 403 for an abuse of discretion. *Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450.  In this case, the evidence was more probative than prejudicial because it showed that Murphy had access to MC alone while under a supervised-visitation order contrary to what he and his witnesses had testified to at trial.  We find that the circuit court did not abuse his discretion and that the probative value of Murphy's statement outweighed the possible prejudice.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.